shown by the evidence to have put upon his services. That value was one-tenth of the profits in the first instance, and then the additional two-tenths. It is clearly shown that they valued the bankrupt's services at the entire three-tenths. Knox paid $4,000 for his two-tenths to Aaron H. Rathbone. In return he was obliged to devote his services to the business of the firm. Mrs. Rathbone reimbursed to Knox his $4,000, and, in return for her two-tenths of the profits, rendered no services to the firm. The bankrupt's services could only be retained by the firm, by their consenting to allow Mrs. Rathbone to receive her two-tenths without her rendering any services. It, therefore, follows logically and inevitably, that those two-tenths represented, in the estimation of the associates of the bankrupt in the firm, the value of his services to the firm, in addition to the one-tenth paid to him directly, and that the two-tenths were paid to her to retain the bankrupt's services and as a compensation for those services, made on the demand of the bankrupt. There was no other possible consideration moving to the firm for the two-tenths. They did not receive any part of the $4,000 which Mrs. Rathbone paid to Knox, nor did they receive any services in place of those of Knox, and they gave up to Knox eleven of their customers. It may be that the $4,000 paid by Mrs. Rathbone to Knox, considered as paid by her at the request of and for the benefit of the firm, in order to enable them to retain the bankrupt's services, may properly be reimbursable to her, with interest, out of the two-tenths of the profits paid to her; but, even if that be so, it cannot affect the true character of the transaction, as making her a trustee of such profits for the creditors of the bankrupt.

The eighth specification is, in my judgment, fully proved, in its entire scope. There was a wilful concealment by the bankrupt of his property derived from the two-tenths profits in the firm, by covering it up in the hands of his wife. The care with which the papers were prepared, including the putting in writing at the time the agreement with the bankrupt respecting his one-tenth, which had, in fact, existed for seven months previously, only serves to show the deliberation with which the scheme was contrived. Fraud is scarcely ever made out by direct evidence. The proof of it is generally arrived at by the interweaving of circumstances, till the fabric is fully formed. It is not often that as full evidence of it is shown as in this case, and yet less full evidence is often entirely satisfactory. The documents and the additional testimony produced on the second reference in this case fully sustain the conclusion of the court on the first hearing and clear up many points that were obscure, and nothing has been shown to induce any modification of any of the views stated in the decision then made by the court.

A discharge is, therefore, refused.

## Case No. 11,582.

In re RATHBONE.

[See Case No. 11,580.]

---

## Case No. 11,583.

In re RATHBONE.

[1 N. B. R. 536 (Quarto, 145):[1] 1 Am. Law T. Rep. Bankr. 70.]

District Court, S. D. New York. 1868.

BANKRUPTCY — DISCHARGE — FALSE SWEARING — CONCEALMENT OF ASSETS.

1. A bankrupt must be held to have wilfully sworn falsely in the affidavit annexed to his inventory where he states therein that he has no assets when he has concealed his property, derived from profits in the firm of which he is really a partner, by covering them (the profits) up in the hands of his wife.

2. He is further guilty of fraud in not delivering such property to his assignees. Discharge refused.

[In the matter of Robert C. Rathbone, a bankrupt. The cause was first heard on specifications filed by a creditor of the bankrupt in opposition to his discharge. Case No. 11,580.]

John H. White, for the bankrupt.
H. P. Herdman, for the creditor.

BLATCHFORD, District Judge. The specifications for trial in this case, in opposition to the discharge of the bankrupt, are the fifth, seventh, and eighth. I do not think there is any evidence to sustain the averments of the fifth specification, namely, that the bankrupt is entitled to the two lots in Sixty-Third street, New York. As to the seventh specification, the evidence shows that the bankrupt is not, and never was, the owner of any one of the life insurance policies mentioned in the specification. The eighth specification is "that the business of Rathbone Brothers & Co., brokers, &c., in Broadway, New York, was started and built up by said bankrupt, and has so continued under his supervision to the present time; the net profits whereof are now about $35,000 per year; that said bankrupt professes to receive only about one tenth of the annual profits of said business as a clerk, and in lieu of salary, which amounts to about $3,-600 per annum, his said wife represents by purchase or pretended purchase, for $4,000, a one fifth interest in said business, worth about $7,000 per year, all of which business, except those portions actually and not fraudulently sold to others, are assets in the hands of said bankrupt and should inure to the benefit of his creditors." The bankrupt sets forth, in this inventory of assets, no assets whatever, except his personal clothing, of the value of $100. In November, 1855, the bankrupt and one Halsey, being in partnership, under the firm name of Robert C. Rathbone,

---

[1] [Reprinted from 1 N. B. R. 536 (Quarto, 145), by permission.]